**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| LUIS MORALES-GARCIA; BENITO PEREZ-REYEZ; CESAR JIMENEZ-MENDOZA; GABRIELA RENDON-VASQUEZ; JUANA VELASCO-TORRES, on behalf of themselves and all others similarly situated, *Plaintiffs-Appellants,*<br><br>v.<br><br>BETTER PRODUCE, INC.; RED BLOSSOM SALES, INC., *Defendants-Appellees.* | No. 22-55119<br><br>D.C. No. 2:18-cv-05118-SVW-JPR<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted February 10, 2023
Pasadena, California

Filed June 1, 2023

Before:  Mary M. Schroeder, Richard C. Tallman, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Schroeder

# SUMMARY[*]

## California Labor Code

The panel affirmed the district court's ruling in favor of defendants Red Blossom Sales, Inc. and Better Produce, Inc., after a bench trial, in a case that concerns the application of a California labor law enacted to protect workers whose labor has been outsourced to a labor provider.

Under the statute, Cal. Labor Code § 2810.3(a)(1)-(3), (6), the outsourcing entity, known as a "client employer," is liable for the laborers' wages if the laborers' work is within the outsourcers' "usual course of business."  In this case, the plaintiffs are agricultural workers hired by strawberry growers ("the Growers") to pick the fruit that was then turned over to Red Blossom and Better Produce ("the Marketers") for distribution.

The plaintiffs sought to hold the Marketers liable for their wages as "client employers."  The Marketers cooled and sold the berries principally to large retail grocery chains.  The Marketers conducted their cooling and distribution operations on premises that were close to but separate from the farms.  In 2018, the Growers stopped paying the plaintiffs and later filed for bankruptcy.  The plaintiffs sued the Growers and the Marketers as joint employers under California and federal law.  The plaintiffs also sued the Marketers as client employers under California

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Labor Code § 2810.3. The district court ruled for the Marketers on all theories. The plaintiffs appealed only with respect to the Marketers' liability under § 2810.3.

The panel held that the plaintiffs were not performing labor within the Marketers' "usual course of business" as defined by the statute. That term is defined as "the regular and customary work of a business, performed within or upon the premises or worksite of the client employer." The panel held that the district court correctly ruled that by requiring the work to take place on the premises of the client employer, the legislature required that a client employer exercise some element of control over the place where the laborers work. Given the particular facts of this case, the panel concluded that the plaintiffs' work took place on the farms where the strawberries were grown, not on the premises or worksites of the Marketers, and that the Marketers are therefore not liable as client employers under § 2810.3.

## COUNSEL

Verónica Meléndez (argued), Cecilia Guevara Zamora, and Cynthia L. Rice, California Rural Legal Assistance Foundation, Sacramento, California, for Plaintiffs-Appellants.

Steven B. Katz (argued), Constangy Brooks Smith & Prophete LLP, Los Angeles, California; Vincent T. Martinez, Twitchell and Rice LLP, Santa Maria, California; Todd C. Hunt, Law Office of Todd C. Hunt APC, Westlake, Village, California; for Defendant-Appellee Better Produce Inc.

Effie F. Anastassiou (argued), Anastassiou & Associates,
Salinas, California; Jason W. Kearnaghan, Nora K.
Stilestein, and Richard J. Simmons, Sheppard Mullin
Richter & Hampton LLP, Los Angeles, California; for
Defendant-Appellee Red Blossom Sales Inc.

George A. Warner, Legal Aid at Work, San Francisco,
California; Catherine K. Ruckelshaus, National
Employment Law Project Inc., New York, New York; for
Amici Curiae Legal Aid at Work and National Employment
Law Project.

Robert G. Hulteng, Damon M. Ott, and Alvin Arceo, Littler
Mendelson P.C., for Amici Curiae Western Growers
Association, Ventura County Agricultural Association,
Grower-Shipper Association of Santa Barbara and San Luis
Obispo Counties, Grower-Shipper Association of Central
California, California Strawberry Commission, and the
California Fresh Fruit Association.

## OPINION

SCHROEDER, Circuit Judge:

This appeal concerns the application of a California labor law enacted in 2014 to protect workers whose labor has been outsourced to a labor provider. Under the statute, the outsourcing entity, known as a "client employer," is liable for the laborers' wages if the laborers' work is within the outsourcers' "usual course of business." Cal. Labor Code § 2810.3(a)(1)-(3), (6). In this case, the Plaintiffs-Appellants are agricultural workers hired by strawberry growers ("the Growers") to pick the fruit that was then turned over to the Defendants-Appellees Red Blossom Sales, Inc. and Better Produce, Inc. ("the Marketers") for distribution.

Appellants seek to hold the Marketers liable for their wages as "client employers." The Marketers cooled and sold the berries principally to large retail grocery chains. The Marketers conducted their cooling and distribution operations on premises that were close to but separate from the farms.

In 2018, the Growers stopped paying Appellants and later filed for bankruptcy. Appellants sued the Growers and the Marketers as joint employers under California and federal law. Appellants also sued the Marketers as client employers under California Labor Code § 2810.3. The district court ruled for the Marketers on all theories. Appellants appeal only with respect to the Marketers' liability under § 2810.3.

We affirm because we hold that Appellants were not performing labor within the Marketers' "usual course of business" as defined by the statute. That term is defined as

"the regular and customary work of a business, performed within or upon the premises or worksite of the client employer." Cal. Labor Code § 2810.3(a)(6). Given the particular facts of this case, we conclude that Appellants' work took place on the farms where the strawberries were grown, not on the premises or worksites of the Marketers. The Marketers are therefore not liable as client employers under California Labor Code § 2810.3.

**I.       Statutory Background**

The California Legislature enacted § 2810.3 to establish a new form of liability for employers, termed "client employers," who obtain workers from third-party contractors. The statute defines "client employer" as "a business entity, regardless of its form, that obtains or is provided workers to perform labor within its usual course of business from a labor contractor." Cal. Labor Code § 2810.3(a)(1)(A). A third-party contractor who supplies workers to the client employer is considered a "labor contractor" and is defined in the statute as "an individual or entity that supplies, either with or without a contract, a client employer with workers to perform labor within the client employer's usual course of business." *Id.* § 2810.3(a)(3).

The statute's definitions are central to our analysis. They limit the scope of the statute by requiring the workers to perform labor "within the client employer's usual course of business." *Id.* The statute in turn defines "usual course of business" as "the regular and customary work of a business, performed within or upon the premises or worksite of the client employer." *Id.* § 2810.3(a)(6).

The legislative history of the statute indicates that client employer liability was created to address the growing business model where a business uses a contractor to supply

workers who are supervised and paid by the contractor, but
appear to be employees of the business.  In a post-hearing
summary, the California Assembly Committee on Labor and
Employment described the problem as follows:

> We walk into a Marriott and assume that the
> people who greet us at the front desk or who
> clean our rooms each day are employees of
> the venerable brand (as their uniforms
> imply). We greet the technicians sent to our
> home to fix our cable, not even questioning
> whether they work for the media company to
> whom we pay our bills. In short, we assume
> that the companies who invest millions of
> dollars to convince us of the benefits of
> buying products under their retail nameplate
> or to purchase the unique services they offer
> also undertake the operations needed to
> produce them—including acting as the
> employer of all the inter-connected people
> who make their business possible. Those
> assumptions are increasingly wrong[.]

Hearing on AB 1897 Before the Assemb. Comm. on Labor
and Emp't, Cal. H. at 2 (Apr. 23, 2014) (quoting DAVID
WEIL, THE FISSURED WORKPLACE: WHY WORK BECAME SO
BAD FOR SO MANY AND WHAT CAN BE DONE TO IMPROVE IT
3-4 (2014)).  Section 2810.3 thus makes the client employer
responsible for paying the workers it uses in its business.

**II.     Factual Background**

Appellants are farmworkers who harvested strawberries
in Santa Barbara County, California in 2016 and 2017.
Appellants were hired by three farms that grew the berries:

Higuera Farms, Inc., Big F Company, Inc., and La Cuesta
Farming Company, Inc. ("the Growers"). The Marketers
held master leases to the farmlands and subleased them to
the Growers.

The Marketers were each licensed by the U.S.
Department of Agriculture to sell produce as a "commission
merchant." Such a license is required for any entity that buys
or sells more than 2,000 pounds of fresh or frozen fruits and
vegetables in a given day. *See* 7 U.S.C. § 499a(b)(5)-(6); 7
C.F.R. § 46.2(x). The Marketers entered into yearly
marketing and sublease agreements with the Growers, which
specified that the land would be used only to grow
strawberries and that the Marketers retained the exclusive
right to sell the strawberries to their retail customers.

Under their agreements with the Marketers, the Growers
were responsible for preparing and cultivating the land and
for supervising and controlling the workers. The Marketers
provided the Growers with packaging materials,
communicated with them about the quantity of the
strawberries produced, and had the strawberries placed into
containers with the Marketers' labels on them. The
Marketers retained the right to enter the lands to conduct
inspections of the strawberries. Red Blossom's retail
customers required Red Blossom to conduct additional food
safety compliance inspections, including random food safety
audits, and to pay for a third-party audit. The Growers
conducted the actual farming operations and supervised
Appellants' work.

Once the Appellants completed harvesting and packing
the berries, the Marketers were then responsible for cooling
and selling them. As commission merchants, the Marketers
had the sole authority to make decisions regarding the sale

of the strawberries.  After deducting their commission fee, cooling fee, and the cost of packaging materials, the Marketers paid the remaining sale proceeds to the Growers. Better Produce also provided financial advances to the Growers to cover worker payroll and other operating expenses, and these were also deducted from the proceeds of the sales.  Under the sublease agreements, the Marketers retained the right to enter the lands if the Growers filed for insolvency, stopped growing the crop, or failed to follow "customary practices" for growing the berries.

This lawsuit arose after the Growers failed to pay the wages of the workers who grew and harvested the berries. In 2018, the workers filed a class action lawsuit against both the Growers and the Marketers, alleging wage and hour violations.  Plaintiffs' complaint alleged the Marketers were liable as joint employers under federal and California law and as client employers under California Labor Code § 2810.3.  While the proceedings were ongoing, the Growers filed for bankruptcy.    The district court denied the Marketers' motion for summary judgment.    The parties agreed to bifurcate the trial, with all issues related to the Growers' liability to be tried later by a jury.  The Marketers' liability was to be determined first in a bench trial.  The two-day bench trial took place in February 2020 and the district court entered judgment in favor of the Marketers under Fed. R. Civ. P. 54(b).  *Morales-Garcia v. Higuera Farms, Inc.*, No. 2:18-cv-05118, 2021 WL 6774327, at *45 (C.D. Cal. Oct. 15, 2021).

In a comprehensive order explaining its decision, the district court first looked to whether the Marketers were joint employers under federal or California law.    Plaintiffs' federal claim had asserted that the Marketers employed them and failed to pay their wages in violation of the Migrant and

Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1801-1872. *Id.* at *3-4. The district court analyzed the AWPA claim under the U.S. Department of Labor's regulation establishing the "economic reality" test. 29 C.F.R. § 500.20(h)(5)(iii). It provides: "In determining whether or not an employment relationship exists between the agricultural employer/association and the agricultural worker, the ultimate question to be determined is the economic reality—whether the worker is so economically dependent upon the agricultural employer/association as to be considered its employee." *Id.* The regulation also contains a non-exhaustive list of factors to guide a court's analysis of whether such economic dependency exists. The list includes whether the agricultural employer had the power to "direct, control, or supervise the worker(s) or the work performed." *Id.* § 500.20(h)(5)(iv)(A).

The district court concluded that Plaintiffs were not economically dependent on the Marketers. The court, after the bench trial, found that the Marketers did not supervise the workers in planting, cultivating, harvesting, or packing the strawberries, nor did they control decisions related to Plaintiffs' work assignments. *Morales-Garcia*, 2021 WL 6774327, at *12-14. The Marketers were therefore not joint employers under federal law.

In evaluating Plaintiffs' claim of joint employer liability under California law, the court looked to the seminal case, *Martinez v. Combs*, 231 P.3d 259 (Cal. 2010), to conclude that Plaintiffs failed to meet their burden. *Morales-Garcia*, 2021 WL 6774327 at *27-28, 34. The facts in *Martinez* were similar to the facts here in that the case involved the relationship between agricultural workers, a strawberry farmer, and strawberry merchants. 231 P.3d at 262-63. The farmer subleased land from one of the strawberry merchants

in order to grow and harvest the berries. *Id.* at 263. The California Supreme Court held that the merchants who sold the berries were not joint employers of the workers. *Id.* The merchants did not supervise or control the work; the farmer had the "exclusive power to hire and fire his workers, to set their wages and hours, and to tell them when and where to work." *Id.* at 282. The district court here similarly concluded that the Marketers were not joint employers under California law because they did not exercise control over Plaintiffs' wages, hours, or working conditions. *Morales-Garcia*, 2021 WL 6774327, at *28-34.

The district court then turned to the California labor statute, § 2810.3, to determine whether the Marketers were liable as client employers. The court focused on the key statutory provision, the definition of "usual course of business," that requires the work performed by Plaintiffs to be the "regular and customary work" of the Marketers and to take place on the Marketers' "premises or worksite." Cal. Labor Code § 2810.3(a)(6).[1]

---

[1] The statute in relevant part reads as follows:

(a) As used in this section:

(1)(A) "Client employer" means a business entity, regardless of its form, that obtains or is provided workers to perform labor within its usual course of business from a labor contractor. . .

(3) "Labor contractor" means an individual or entity that supplies, either with or without a contract, a client employer with workers to perform labor within the client employer's usual course of business. . .

(6) "Usual course of business" means the regular and customary work of a business, performed within or upon the premises or worksite of the client employer.

Plaintiffs advanced several arguments to support their
position that their work harvesting the strawberries was part
of the "regular and customary work" of the Marketers.  The
district court rejected Plaintiffs' most sweeping argument:
that harvesting strawberries was within the regular and
customary work of the Marketers because the berries had to
be picked in order for the Marketers to conduct their sales
business.  *Morales-Garcia*, 2021 WL 6774327, at *38-42.
The court viewed that theory to be too broad because it
would create liability for every downstream entity dealing
with the fruit in the course of conducting business, ultimately
including even the supermarket chains selling the berries to
customers.  *Id.*  Nothing in the language or history of the
statute suggested such breadth.

The court therefore looked further to examine whether
the work performed by Plaintiffs was done on the "premises
or worksite" of the Marketers.  In the absence of any
authoritative ruling by a California appellate court, the
district court looked to the language of the statute and to its
purpose.   The court examined the legislative history,
including the example of hotels that use subcontracted
workers on their premises to perform housekeeping.  *Id.* at
*42.  The court also focused on the legislative intent to
protect workers from labor violations.  *Id.*  The court
reasoned that in requiring the subcontracted laborers' work
to be performed on the client employer's premises, the
legislature sought to confer liability on entities that could
reasonably be expected to prevent labor violations because
they exercised sufficient control over the premises.  *Id.*

The court thus examined the degree of control the
Marketers' exercised over the location of the work, *i.e.*, the
farms.  The court found from the trial record that the
Growers had sole control over managing the workers and

cultivating the farms, and that the control the Marketers exercised over the farms was "consistent with the relationship between a sublessor and sublessee." *Id.* at *43. The court also examined the degree to which the Marketers monitored the agricultural operations on the farms and concluded it was consistent with the Marketers' concern for quality control and not evidence of control over the farming operations themselves. Thus, the district court concluded that the Marketers were also not liable as client employers under California Labor Code § 2810.3. *Id.* at *37.

Plaintiffs-Appellants appeal only this ruling. They primarily contend that the district court erred in requiring control over the laborers' work to establish liability under § 2810.3. They argue such control is relevant only to joint employer liability, not liability under the California statute. We hold that the district court correctly ruled that by requiring the work to take place on the premises of the client employer, the legislature required that a client employer exercise some element of control over the place where the laborers work.

## III.    Analysis

Plaintiffs-Appellants' major contention is that the district court erred in applying any form of a control test when interpreting the statutory requirement that the work take place on the client employer's premises or worksite. They correctly point out that the word "control" is not in the statute and that a control test was used by the California Supreme Court in *Martinez*, 231 P.3d at 283-87, in an almost identical factual situation to hold that strawberry merchants were not joint employers of agricultural workers who picked the berries. Plaintiffs-Appellants argue that it was error for the district court to apply a control test here because in

enacting § 2810.3, the California legislature sought to provide for broader liability than discussed in *Martinez*.

Plaintiffs-Appellants confuse the control test used in *Martinez* with the control test used by the district court. In *Martinez*, the issue before the California Supreme Court was whether merchants of strawberries were liable as joint employers for the unpaid wages of the agricultural workers who picked the berries. 231 P.3d at 267-68. The workers were employed by a farmer who entered into agreements with the merchants to sell the berries harvested on the farms. *Id.* at 262-65. The court applied the definition of "employer" in the California Industrial Welfare Commission's wage order to determine whether an employment relationship existed. *Id.* at 277. The wage order, No. 9-2001, defined employer as "any person . . . who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." *Id.* (citing Cal. Code Regs., tit. 8 § 11090, subd. 2(G)).

We have consistently applied a similar control of work test to determine whether an employment relationship exists under California law. *See Salazar v. McDonald's Corp.*, 944 F.3d 1024, 1029-30 (9th Cir. 2019); *Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981, 988-994 (9th Cir. 2014). The Restatement of Employment Law also adopts a control test and states that an individual is an employee if "the employer controls the manner and means by which the individual renders services[.]" RESTATEMENT OF EMP'T L. § 1.01(a)(3) (AM. L. INST. 2015).

The California Supreme Court in *Martinez* applied the control of work test to hold that the merchants were not liable because there was no evidence they either directly or

indirectly exercised control over the agricultural workers' wages, hours, or working conditions. 231 P.3d at 283-87.  It was undisputed that the farmer of the strawberries exercised control over the workers and the contracts between the merchants and the farmer explicitly gave the merchants no authority to direct the work of the farmer's employees.  *Id.* at 287.  The court stated that the farmer "operated a single, integrated business operation, growing and harvesting strawberries[,]" he paid the workers out of the combined revenues from the strawberry sales, and he alone "hired and fired plaintiffs, trained and supervised them, determined their rate and manner of pay . . . , and set their hours[.]"  *Id.* at 284.  The legal question in *Martinez* was whether the Merchants controlled the workers.  The California Supreme Court held that they did not.

The district court in this case was concerned with a different question in order to decide client employer liability under § 2810.3.  That question was whether the farms where Plaintiffs-Appellants harvested strawberries could be said to be the premises of the Marketers.  Clearly the Marketers did not possess the farmlands, because they were subleased to the Growers.   The question the district court asked was whether the Marketers nevertheless exercised sufficient control over the farmlands so as to make the lands their "premises."  In short, while *Martinez* and similar authorities were concerned about control of the workers, the district court for purposes of § 2810.3 was concerned about control of the land.

This is because the key issue under § 2810.3 concerns *where* the Plaintiffs-Appellants did the work of harvesting the strawberries.  In holding the Marketers did not control the premises, the district court was not using the same control test that the California Supreme Court used in the

joint employment context in *Martinez*.  We have no basis for
holding the test the district court used was erroneous.

Plaintiffs-Appellants also reiterate their arguments that
the farmlands where they worked were the Marketers'
premises because the Marketers held the master leases, and
their subleases to the Growers contained a restriction that the
land had to be used for farming.  The Marketers also retained
the right to enter the land and take over farming operations
if the Growers abandoned growing the crop or filed for
insolvency.  Plaintiffs-Appellants contend that the district
court incorrectly concluded that the relationship between the
Marketers and the Growers was representative of a typical
sublessor and sublesee relationship.  Plaintiffs-Appellants
assert that the Marketers relied on the subleases to "create a
legal fiction of independence" between themselves and the
Growers to limit their liability for the workers who harvested
the strawberries.

The terms of the sublease and marketing agreements
reflect, however, that the Marketers and Growers were
separate business entities.  While the Marketers held the
master leases to the farmlands, they did not have the right to
exercise control over the farms, or to direct the harvesting
work performed on them.  The agreements gave the Growers
the right to harvest and receive the net profits from the
berries.  The Growers had the sole authority to control the
farming of the strawberries and to direct Plaintiffs-
Appellants in the performance of their work.  The Marketers'
business of cooling and selling the strawberries was not
conducted on the farms subleased to the Growers.  The
district court aptly pointed to authority that the contractual
restrictions on land use and the right to regain possession of
the land upon abandonment are typical in California
commercial leases.  *See* Cal. Civ. Code § 1997.210; 10 Cal.

Real Est. § 34:59 (4th ed.).   Such restrictions do not
constitute evidence of control that would render the farms
the premises of the Marketers.

Plaintiffs-Appellants argue that even if the farms did not
constitute the "premises" of the Marketers, the farms were
"worksites" of the Marketers within the meaning of the
statute.   Plaintiffs-Appellants point to the monitoring
activities the Marketers' personnel conducted on the farms
as grounds for reversing the district court.   While it is true
that the Marketers' personnel went to the farms to inspect
the berries for quality control and food safety compliance,
the Plaintiffs-Appellants were not performing work within
the Marketers' "usual course of business."   Plaintiffs-
Appellants did the work of the Growers, who were solely
responsible for directing the Plaintiffs-Appellants' work in
planting, cultivating, and harvesting the fruit.   Plaintiffs-
Appellants' position is not consistent with the language of
the statute.

Nor is it consistent with the legislative purpose.   The
legislature's intent was to impose liability on entities who
could reasonably be expected to be able to prevent labor
violations.   *See* Cal. S. Appropriations Comm. Fiscal
Summary on AB 1897 at 1 (Aug. 14, 2014).   Hence, the
requirement that the work take place on the premises or
worksite of the client employer.   The Marketers' quality
control inspections did not enable them to oversee the
Growers' compliance with applicable labor laws.   Such
inspections fulfilled the Marketers' quality control
obligations to their customers and to the public.   The
obligation of ensuring food safety is one that retailers have
long required.   *See* Standards for the Growing, Harvesting,
Packing, and Holding of Produce for Human Consumption,
80 Fed. Reg. 74,354, 74,521 (Nov. 27, 2015).   The

Marketers' obligation to ensure the safety of the products they sell does not render the farms a "worksite" of the Marketers.

Amici, Legal Aid at Work and National Employment Law Project, support Plaintiffs-Appellants with a somewhat different take. They stress that "worksites" can include locations away from a business's headquarters, and they therefore contend this statute covers the work performed by Plaintiffs-Appellants on the farms.

In support of this position, Amici rely on cases in which the employer's work was performed on premises controlled by others. In *Mamo Transportation, Inc. v. Williams*, 289 S.W.3d 79 (Ark. 2008), the employer's business was transporting vehicles and was performed on public roadways beyond the employer's control. The Arkansas Supreme Court held this did not defeat the existence of an employment relationship for purposes of providing unemployment insurance. *Id.* at 85. In *McPherson Timberlands, Inc. v. Unemployment Insurance Commission*, 714 A.2d 818, 822-23 (Me. 1998), the employer's business was harvesting and marketing timber, and it was liable for unemployment taxes even though it entered into contracts with individuals to harvest the wood on third parties' land. Amici point out that in today's world, workers can commonly be found on remote premises, including workers' own homes. They suggest that any related work done outside of a business' headquarters can be a "worksite" of the business.

Under California law, labor statutes are remedial statutes intended to protect the interests of workers. *See Brinker Rest. Corp. v. Superior Ct.*, 273 P.3d 513, 527 (Cal. 2012). We look to the text as the best indicator of legislative

purpose.  *See id.*   The problem in this case is that the Plaintiffs-Appellants are not doing the work of the Marketers' business, but the work of the Growers.  Unlike the transportation company in *Mamo*, the Marketers had a principal place of business where they conducted their operations.  And unlike the timber seller in *McPherson*, the Marketers were not also in the business of harvesting the product grown on the farms.

The Marketers' business was separate in nature as well as location from the business of the Growers.  The Marketers are federally licensed under the Perishable Agricultural Commodities Act as "commission merchants."   Such licensing ensures stable business practices in getting agricultural products from the farms to retail sellers and to consumers.  *See* 7 U.S.C. § 499b.  It in no way suggests that the regular and customary work of the Marketers would include growing the crops, or that the farms are worksites of the Marketers.   The federal license scheme actually underscores the difference between the growing and the marketing of agricultural products.

Plaintiffs-Appellants and Amici nevertheless point to a sentence in the legislative history that refers to abuses in the use of off-site as well as on-site labor.  This sentence gave examples of how the contract labor problem has been described.  "Some have described the problem as . . . [employers] can hire labor suppliers to perform work on-site (as with subcontracted janitorial workers) or off-site (as with industrial laundry workers cleaning linens for hotels and hospitals)."   Hearing on AB 1897 Before the Assemb. Comm. on Labor and Emp't, Cal. H. at 4 (Apr. 23, 2014). The sentence was about the nature of the problem being addressed.  It did not define the scope of the statute the legislature later enacted, which was narrower, and was

limited to work performed on the "premises or worksite" of
the client employer.

California Labor Code § 2810.3 represents the
legislative intent to address a part of the broad problem of
contracted labor the legislature had identified.  The statute
expands liability for a company that may use financially
shaky subcontractors to provide workers to perform the work
of the company's business at the company's place of
business.  It does not go so far as to extend liability for the
wages of workers performing work elsewhere, even if the
workers are producing a product necessary to that
company's business.

The district court therefore correctly ruled that the
Marketers, which cooled and distributed the berries from
their own places of business, were not liable for the wages
of the Plaintiffs-Appellants, whose work growing the berries
was done on the farms maintained and operated by the
Growers.

**AFFIRMED**.